(95 Misc. Rep. 451)

### In re MORGAN'S ESTATE.

(Surrogate's Court, New York County. May 18, 1916.)

1. TAXATION ☞20—EXTENT OF POWER—TERRITORIAL LIMITATIONS.

By reason of the "due process" clause of the Fourteenth Amendment to the federal Constitution, and because of the fact that state laws do not operate beyond the precincts of its territory, a state cannot levy taxes on property out of its jurisdiction.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 51–54; Dec. Dig. ☞20.]

2. TAXATION ☞93(1)—PROPERTY OF NONRESIDENTS.

An owner of personal property, not domiciled or residing in a state, cannot be made liable for a tax on such personalty as in law follows his person to his foreign residence or domicile.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 182; Dec. Dig. ☞93(1).]

3. TAXATION ☞98—SITUS OF PROPERTY—MOVABLES—DOMICILE.

The principle, "mobilia sequuntur personam," is as binding on the state as it is on the courts of the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 196–198, 200; Dec. Dig. ☞98.]

4. TAXATION ☞57—PROPERTY TAXABLE—NATURE AND SOURCE OF POWER.

Residence, constructive or actual, or protection, is the basis of all taxation of personal property by a state of the Union.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 139; Dec. Dig. ☞57.]

5. DOMICILE ☞8—PRESUMPTION.

Where a person has established a domicile, either of origin or choice, the presumption in proceedings against him by the sovereign of that domicile is that his domicile is permanent, in the absence of proofs to the contrary.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 36, 37; Dec. Dig. ☞8.]

6. TAXATION ☞593(2)—PROCEEDINGS TO COLLECT—BURDEN OF PROOF—RESIDENCE.

In actions to collect unpaid taxes, on the whole issue of residence or domicile, the onus is on the state to show by a preponderance of evidence that the defendant is amenable to the tax levied, and defendant is not compelled to show by a preponderance of proofs that he is not a resident.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1215; Dec. Dig. ☞593(2).]

7. STATES ☞209—ACTION—BURDEN OF PROOF—PARTY ASSERTING FACTS.

The burden on the whole case is always in the last resort on the actor in any legal proceeding, though the state is the actor.

[Ed. Note.—For other cases, see States, Cent. Dig. § 200; Dec. Dig. ☞209.]

8. TAXATION ☞93(1)—PROPERTY OF NONRESIDENTS.

When actual residence is the ground for the imposition of a tax, the power to tax ceases at any moment residence ceases.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 182; Dec. Dig. ☞93(1).]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. JUDGMENT ☞749—PROBATE PROCEEDINGS—NOT CONCLUSIVE AS TO DOMICILE.**

A decree of probate is not an adjudication of domicile.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1302–1305; Dec. Dig. ☞749.]

**10. TAXATION ☞867(1)—TRANSFER TAX—RESIDENCE.**

The estate of a decedent formerly domiciled in Washington, who rented her house there and moved to New York, where she bought a house, and until her death occupied it during about six months of the year, traveling the remaining months, is taxable under the Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245), as being that of a resident, although she described herself in legal documents as a resident of Washington, and her will was admitted to probate in the District of Columbia.

[Ed. Note.—For other cases, see·Taxation, Cent. Dig. § 1681; Dec. Dig. ☞867(1).]

**11. DOMICILE ☞2—"DOMICILE" AND "RESIDENCE" NOT CONVERTIBLE TERMS.**

"Domicile" and "residence" are not always convertible terms in law, for, while frequently in statutes these terms are made synonymous, at other times they denote inconsistent conceptions.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 2; Dec. Dig. ☞2.

For other definitions, see Words and Phrases, First and Second Series, Domicile; Residence.]

Proceeding to assess transfer tax upon the estate of Carolyn F. Morgan, deceased. Action ordered in accordance with opinion.

Lord, Day & Lord, of New York City (Lucius H. Beers, of New York City, of counsel), for executors.

Charles T. Kunkel, of Brooklyn, for State Comptroller.

FOWLER, S. This is a proceeding under the Transfer Tax Law, to appraise the property of the decedent and to assess a tax upon its transfer under her will. The executors contend that the decedent's last legal residence or domicile was in Washington, D. C., and consequently that the transfer of her intangible property in this state is not subject to a transfer tax imposed by this state. The state comptroller, on the other hand, contends that the decedent had her last residence or domicile in this state, and consequently that the transfer of her personal property, wherever situated, is subject to a transfer tax imposed by this state. Testimony was taken before the transfer tax appraiser upon the question of decedent's last residence or domicile, and the state comptroller and the executors have stipulated that such testimony may be considered by the surrogate in determining the question put at issue in the same manner and with the same effect as if the witnesses had appeared before me.

Let me remark at the outset that this matter involves propositions of some nicety, and that in so far as the application of legal principles to controverted facts is concerned the cause is not free from difficulty. It involves the last domicile, or the last legal "residence," rather, of a widow. The legal domicile of a woman is oftentimes a more complicated question than that of a· man, who votes and exercises all the prerogatives and rights of a citizen in a particular state or territory.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1-4] By reason of the "due process" clause of the Fourteenth Amendment to the federal Constitution, and because of the fact that state laws do not operate beyond the precincts of its territory, a state is disqualified from levying taxes on property out of its jurisdiction. The right to tax depending, as it does, upon the actual or constructive presence of property within a particular state, it follows that an owner of personal property, not domiciled or residing within this state, cannot be made liable for a tax on such personalty as in law follows his person to his foreign residence or domicile. Dewey v. Des Moines, 173 U. S. 193, 19 Sup. Ct. 379, 43 L. Ed. 665; Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. Ed. 556. The principle, "mobilia sequuntur personam," is as binding on the state as it is on the courts of the state. The exceptions to this principle are limited and do not arise here. Judge Cooley remarks tersely, in substance, that where the state affords no protection there is no equivalent received by the nonresident and no basis for taxation. 1 Cooley·on Taxation, 84. This statement is recognized in this jurisdiction. In Dorwin v. Strickland, 57 N. Y. 492, it was held that the assessors had no jurisdiction to assess a nonresident. Thus residence, constructive or actual, or protection, is the basis of all taxation of personal property by a state of the Union.

The adjudications in the state of New York in reference to domicile and legal residence are not many. In some directions the law of this state bearing on domicile and residence may be affirmed not to be explored. In other words, it is still in vacuo, or waiting to be filled up by the usual judicial processes of analogy and induction. The ultimate and usual reservoir—the old common law—hypothetically in force in New York, and continued as part of our state jurisprudence by constitutional limitation, does not, in any complete measure, fill the void, as prior to our independence of the crown the old common law itself was not very explicit or complete on such questions as are suggested by the technical terms "domicile" and "residence." It is only in the modern English cases, which are, of course, no authority here, however, respectfully we may regard their reasoning, that we find the common law relating to domicile and residence tolerably complete. In England of late years the legal contentions, whether a particular legal domicile is in England, or in Scotland, or in England or in India, or in England or the colonies, as the case may be, have been frequent and well considered. But as before remarked these adjudications are devoid of authority in this jurisdiction.

In most of the cases in this court involving an issue of domicile or residence, domicile or residence is treated as a mere question of fact. But such issues of fact nearly always involve the application of legal principles, sometimes extremely nice in character. It would have much facilitated the surrogate of this county had our own law on this head been more complete and better settled than it is.

[5-7] When it appears that a person has exchanged a domicile of origin or of established choice for a new one, in proceedings by the sovereign of the old domicile against that person, it is held that the onus of making out a new domicile is on the person or his representa-

tives, and not on the state. A once established domicile, either of origin or of choice, is presumed to be permanent, in the absence of proofs to the contrary. Matter of Robitaille, 78 Misc. Rep. 108, at page 110, 138 N. Y. Supp. 391. While this is undoubtedly an accurate proposition of law, yet, for the reasons already stated, it is a rule of procedure only; that is, a rule of going forward. On the whole issue of residence or domicile, the onus is on the state to show by a preponderance of evidence that the individual is amenable to the tax levied. In other words, a mere sojourner, or one in itinere, or one merely in this jurisdiction for the time being, is not compelled to show by a preponderance of proofs, as against the state, that he or she is not a resident. The burden on the whole case is always in the last resort on the actor in any legal proceeding. The state, when actor, is no exception. In any form of free government the rights of the individual are not to be unduly jeopardized by presumptions in favor of the sovereign.

[8] But, as already said, the state of New York has the abstract power and right to tax under our federal and state laws all those who are actually residing animo manendi within its jurisdiction, and also the right to tax those who are not residents to the extent of property in receipt of its protection in some form. The second justification for the imposition of a tax is not, however, involved in this proceeding. When actual residence is the ground of the imposition of a tax, the power to tax ceases at any moment residence ceases. As the publicist, Wheaton, quoting a judicial utterance, observes:

"The character that is gained by residence ceases by nonresidence. It is an adventitious character, and no longer adheres to one from the moment he puts himself in motion bona fide to quit the country sine animo revertendi."

In these days every person sui juris is at liberty to change his domicile or residence whenever he pleases. Matter of Newcomb, 192 N. Y. 238, 252, 84 N. E. 950; Matter of Robitaille, 78 Misc. Rep. 108, 112, 138 N. Y. Supp. 391. The moment legal residence ceases, the state's right to tax on the basis of residency, also ceases, no matter how inconvenient and apparently unjust it may seem to the taxing agents of the state, or to the quasi informers, who, I believe, act for the state in most of these exceptional cases on a contingent basis.

[9] But in this matter it appears that Mrs. Morgan's residence in the city and county of New York had not ceased at the time of her death. Her mere intention to have her legal domicile in Washington, D. C., perhaps did not conflict with her actual residence in this county. Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950, cited in Matter of Rutherford, 88 Misc. Rep. at page 419, 150 N. Y. Supp. 734. To my mind the fact that the rights of succession of her heirs or next of kin or heirs to her estate were determined by the laws of the District of Columbia does not exempt her estate from the tax imposed on one dying a resident of this state. I am still of the opinion that by the public law a decree of probate is not an adjudication of domicile. See cases cited, Matter of Mesa y Hernandez, 87 Misc. Rep. at page 253, 149 N. Y. Supp. 536, and Matter of Horton, 169 App. Div. 292, 295, 154 N. Y. Supp. 827; Overby v. Gordon, 177 U. S. 214, 20 Sup. Ct.

603, 44 L. Ed. 741. If it were otherwise, the right to inheritance taxes would always depend on the law which regulates succession, which I do not understand to be the fact. But now let me proceed to review more definitely the pertinent facts which I deem to be disclosed in the record now before me.

[10] From the testimony given before the appraiser in this matter, and now laid before me, it appears that the decedent and her husband had their domicile of origin or prior choice in this state for many years before 1879, but that in the latter year they purchased a house in Washington, removed there, and continued to reside there until the date of Mr. Morgan's death, which occurred in 1886. That the decedent acquired a new domicile or residence in Washington after she and her husband went to live there is not and cannot be disputed. This was a new domicile of choice, and thus we have one certain or fixed premise in this cause. The decedent inherited from her husband the house which they had lived in at Washington, and she continued to own that house until the date of her death. But Mrs. Morgan occupied the Washington house as her home only until 1905, when she bought a new house situated at No. 70 Park avenue, in the city of New York. She thereafter rented the Washington house, and used the Park avenue house as her town house. She continued to rent the Washington house, and to occupy the Park avenue house, until the date of her death. She never lived at the Washington house after 1905, except for a few days, while she was making arrangements for reletting it to new tenants. It does appear that Mrs. Morgan did not reside during the entire year at No. 70 Park avenue in this city. She lived there about six winter months of the year; the remaining months of each year she spent in Europe or in visiting relatives and friends. She owned the furniture in the Park avenue house, engaged and paid the servants, and conducted it generally as her place of residence or home. It, however, appears that at various times, after the decedent had purchased the house at No. 70 Park avenue, she executed legal documents in which she described herself as a resident of Washington, in the District of Columbia. Some of these documents were executed as late as May 3, 1913. She died on the 4th of August, 1914, and her will was admitted to probate in the District of Columbia.

[11] There is no doubt in my mind that Mrs. Morgan desired to have her legal domicile, with all its advantages, in Washington, D. C., and at the same time she wished to resume her original residence in New York. The Scotch law, it may be observed at this point, makes a subtle distinction between a physical and an intellectual residence. As a matter of fact, Mrs. Morgan did resume her old physical residence in this state and in this county, and while so resident she died. It may be that Mrs. Morgan was entitled to have her legal or intellectual domicile continue in Washington and yet reside here. Upon this abstract point I express no opinion at this time. But, as I endeavored to show in Matter of Martin, 94 Misc. Rep. 81, 157 N. Y. Supp. 474, "domicile" and "residence" are not always convertible terms in law. Frequently in statutes these terms are made synonymous. At other times the terms denote inconsistent conceptions. At all times, however,

legal principles involving domicile throw great light on issues of a de facto or a de jure residence. I have not hesitated to resort to the principle of domicile in various adjudications on residence made by me in this court. In Matter of Martin I pointed out at some length that the Transfer Tax Act employed the term "residence," and not the term "domicile." I refer to my adjudication in that matter only to that extent, as the judgment itself did not commend itself to my superiors.

In the matter now before me there is very little contention as to the fact that Mrs. Morgan at the time of her death was actually physically resident in the city of New York, and that her sojourns elsewhere were not in law tantamount to residence. Thus it happened that she received for the last years of her lifetime all the protection which the sovereignty of the state of New York affords to residents. In my judgment her estate is subject to tax, because she died a de facto resident of the state of New York. I am convinced that Mrs. Morgan's last legal residence was in the city, county, and state of New York, and I so hold.