[S. F. No. 8093.   Department One.—November 22, 1917.]

## In the Matter of the Estate of LAMON V. HARKNESS, Deceased.

PRACTICE — MISTAKE, INADVERTENCE, OR SURPRISE — RELIEF FROM JUDGMENT OR ORDER — NEWLY DISCOVERED EVIDENCE — DISCRETION OF TRIAL COURT.—Assuming, without deciding, that a party to a proceeding, who was represented at the trial, and who seeks relief from an order or judgment taken against him, upon the ground of mistake, inadvertence, surprise, or excusable neglect, in failing to present certain evidence, is not restricted to a motion for new trial, but may properly proceed by motion for relief and to vacate the order or judgment under Code of Civil Procedure, section 473, still the showing to be made on the motion and the discretion of the trial court in passing on it must be the same as on a motion for new trial on the ground of newly discovered evidence.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—PROBABILITY OF CHANGE OF RESULT.—To warrant the granting of a new trial on the ground of newly discovered evidence, there must be a reasonable probability that upon a new trial the newly discovered evidence will change the result.

ID.—APPEAL — ORDER DENYING NEW TRIAL — NEWLY DISCOVERED EVIDENCE—ABUSE OF DISCRETION.—On appeal from an order denying a new trial, sought on the ground of newly discovered evidence, unless the appellate court can see clearly that the discretion of the trial court has been abused, and that the showing made was of such a character as to make it manifest that the case would or should result differently on a new trial, in view of the newly discovered evidence, the order refusing a new trial will not be disturbed.

ESTATES OF DECEASED PERSONS—TAXATION—INHERITANCE TAX—RESIDENCE OF DECEASED—FINDING OF TRIAL COURT—DENYING MOTION TO VACATE ORDER—DISCRETION.—Where an order fixing an inheritance tax was based on a finding that the deceased at the time of his death was a resident of Kentucky, and thereafter the controller, on behalf of the state, moved to vacate the order on the ground of mistake, inadvertence, surprise, and excusable neglect, in failing to discover and present evidence of certain declarations, made by the deceased, to the effect that he was a resident of California, such declarations, comprising, among other things, the filing of an income tax return in San Francisco, where, while visiting, he was detained by illness, so that there was no time to file it elsewhere, and statements, in declaring his baggage for tariff purposes, on returning from trips to Europe in two successive years, that he was temporarily sojourning in Kentucky but was a resident of Los Angeles, California, the

trial court did not abuse its discretion in holding that the newly discovered evidence, taken in connection with the fact that the deceased had for twenty years maintained a home in Kentucky, with servants, horses, stables, automobiles, etc., which home was never closed, that his declarations of residence in Los Angeles were made years after he had closed a house which he had owned there, and that he had for years never spent a day in Los Angeles County, would not on a retrial change the result reached on the original trial that the decedent died a resident of Kentucky.

ID.—DOMICILE — RESIDENCE — EVIDENCE — DECLARATIONS INCONSISTENT WITH CONDUCT.—Declarations of a person, whose residence or domicile is in issue, must give way if inconsistent with actual conduct.

APPEAL from an order of the Superior Court of San Benito County. John L. Hudner, Judge.

The facts are stated in the opinion of the court.

Robert A. Waring, Inheritance Tax Attorney of Sacramento, and Edwin H. Pennock, for Appellant.

McCutchen, Olney & Willard, and Murray, Prentice & Howland, for Respondent.

LAWLOR, J.—This appeal is taken by John S. Chambers, as controller of the state of California, from an order refusing to vacate a prior order fixing the inheritance tax in the above-entitled matter.

Lamon V. Harkness died intestate on January 17, 1915, at the home of his daughter, Myrtle H. Macomber, in San Benito County, in this state. Mrs. Macomber petitioned the superior court of said county for letters of administration on the ground that the decedent died in San Benito County, leaving estate therein and elsewhere in California and being a non-resident of said state. Upon the hearing of the petition counsel for the controller appeared and questioned the witnesses, including the petitioner and her husband, on the subject of the residence of decedent. The court found the residence of decedent to be in Kentucky, and on June 29, 1915, letters of administration were issued to Myrtle H. Macomber. On September 28, 1915, the matter of fixing the inheritance tax due on the estate of the decedent came on for hearing before the inheritance tax appraiser of the county, and Mr. and Mrs. Macomber were again examined by appellant's counsel

as to the residence of the decedent. Thereafter an inheri-
tance tax report was prepared in the office of counsel for
appellant containing the finding that the decedent was a
resident of Kentucky at the time of his death. This report
was duly filed with the court December 14, 1915. On De-
cember 28, 1915, the court made its order confirming said
report and fixing the inheritance tax due out of the estate
at $123,787.74 upon upward of two million dollars of real
and personal property in this state. On June 22, 1916, the
controller gave notice to the administratrix of a motion to
vacate the order on the ground that it had been taken against
him through his mistake, inadvertence, surprise, and excus-
able neglect, for the reason that he had failed to discover and
present to the court, either before or at the time the order
was made, certain declarations made by the decedent to the
effect that he was a resident of this state. Affidavits in sup-
port of the motion were filed the same day. The motion came
up for hearing and argument, and on August 28, 1916, the
court made its order denying the motion. From this order
the controller appeals.

The facts from which the last residence or domicile of the
decedent must be determined are not in dispute. Lamon V.
Harkness was a widower, and a retired business man of con-
siderable means. For upward of twenty years he had been
building up a very pretentious home near Donerail, Ken-
tucky. There he also maintained an extensive stock farm
where he bred horses as his hobby. Only about two years in
all were spent away from Kentucky, and these were taken
up with traveling and visiting his daughter in California,
his son in New York, and his daughter in Pittsburg, Pennsyl-
vania. He also owned a home in New York City and another
on Long Island. But the former was kept boarded up, and
he had never spent a night in the latter. The decedent first
came to California about 1900, stopping at a hotel in Pasa-
dena. Thereafter, Mr. and Mrs. Macomber having estab-
lished themselves in Pasadena, the decedent visited them
there and bought a house adjoining theirs, to give to his
daughter, who, however, never accepted it because of the
expense of up-keep. But she did furnish it with her own
furniture and installed her own servants. The decedent
made several trips to this house, the last in 1906, but never
staying more than about three months in any one year. He

would bring with him only a small trunk and a hand-bag, and never brought any servants. When the decedent left Pasadena in 1906 he never again returned there, and the home was boarded up and put in the hands of agents for sale by Mr. Macomber, for the reason that decedent said he was never going there again. At about this time the Macombers bought a ranch in San Benito County, and decedent visited them there for a week. In 1913 he came again to stay for the holidays, but was taken sick and forced to remain several months. The last visit to California was made the following year at the urgent request of his daughter and his physician, who recommended the change for decedent's health. It was on this visit, while staying at the home of his daughter, that decedent died. He owned a piece of mountain land adjoining the Macomber ranch, which land he had bought to keep off poachers and to give to his son-in-law. At the time of his death he also owned other pieces of property in Pasadena and stock in the Standard Oil Company of California. Besides considerable real and personal property in Kentucky, the decedent had a great deal of property in New York and elsewhere. From these facts the lower court concluded that the residence of decedent at the time of his death was in Kentucky.

The declarations relied upon by the controller to prove an intent to reside in California appear in certain affidavits and baggage declarations of the decedent. In 1910 and in 1912 the decedent was assessed in New York on personal property. On each occasion he made an affidavit in Kentucky stating that he was temporarily sojourning in Donerail, Kentucky, and was a resident of Los Angeles County, California. In 1911 and 1912, upon arriving from Europe, the decedent, in declaring his baggage, stated that he resided in Los Angeles County, California. The controller also relies upon the fact that while decedent was visiting his daughter in 1914 he filed his federal income tax return in San Francisco, and that such return contains the printed instruction that it is to be filed in the district in which the person filing it resides. These various declarations were not discovered by appellant until after the order fixing the inheritance tax had been made. His contention is that they are an expression of decedent's intention to reside in California, and therefore throw sufficient

doubt upon the correctness of the original order· to warrant a new investigation of the facts.

The administratrix has interposed several objections to a consideration of the merits of the order of the lower court. They are: (1) That the order fixing the inheritance tax is a probate order, and no appeal is provided in section 963 of the Code of Civil Procedure from an order refusing to vacate the original order; (2) that appellant is bound by the adjudication of nonresidence in the order granting letters of administration; (3) that no notice of motion to vacate was served on the heirs, who were not represented at the hearing of the motion; (4) and that in any event, no showing was made of mistake, inadvertence, surprise, or excusable neglect, but at most only one of newly discovered evidence as ground for a new trial. Whether or not the remedy in case of newly discovered evidence, where the party has been represented at the trial, is restricted to a motion for a new trial or also comprehends proceedings under section 473 of the Code of Civil Procedure, has not as yet been ·decided in this state. (See *McKinley* v. *Tuttle,* 34 Cal. 235.) But none of the objections raised by respondent need be passed upon at this time, for the reason that it does not appear upon a review of the facts that the trial court in denying the motion abused its discretion. Assuming, for the purposes of this case only, that appellant was not restricted to a motion for a new trial,· but could also properly proceed under section 473 of the Code of Civil Procedure, still the showing to be made on the motion and the discretion of the trial court in passing upon it must be the same as in a motion for a new trial on the ground of newly discovered evidence. It is well settled that on a motion of that character there must be a reasonable probability that upon a retrial the newly discovered evidence will change the result, and that ''the question as to the effect of the newly discovered evidence upon the case is, from its nature, peculiarly one that is addressed to the discretion of the trial court; . . . and unless the appellate court can plainly see that this discretion has been abused, that the showing made was of such a character as to make it manifest that the case would or should result differently on a new trial, in view of the newly discovered evidence, the order of the trial court refusing a new trial will not be disturbed.'' (*People* v. *Sing Yow,* 145 Cal. 1, [78 Pac. 235]. See, also,

*Estate of Emerson*, 170 Cal. 81, [148 Pac. 523]; *People* v. *Oxnam*, 170 Cal. 211, [149 Pac. 165]; *Atkinson* v. *Western Dev. Syndicate*, 170 Cal. 511, [150 Pac. 363]; Hayne on New Trial and Appeal, sec. 91.)

In the case at bar anything that might have been construed as an act of residence in Los Angeles County on the part of decedent had ceased in 1906, and the only facts pointing to residence in San Benito County were the purchase of the mountain land referred to and occasional visits with his daughter. There were no indications whatever, no showing that the decedent looked upon any part of California as his home, from which an intent to reside here could be gathered. In fact, it does appear that he disliked California and had to be urged to even visit here. In Kentucky, however, he did maintain an actual home, where he was cared for by his servants and surrounded by his friends and all the things he had enjoyed for over twenty years. This home place was never closed, and there were always four or five servants in attendance, a string of horses in the stables, and seven or eight automobiles in the garage. To rebut the strong presumption of intention to reside in Kentucky arising from these facts, appellant relies upon the declarations above outlined. That they are some evidence of intent goes without saying. But they are by no means conclusive, and must be considered along with the circumstances under which they were made and other facts appearing in evidence. (Jacobs on Law of Domicile, sec. 463.) Even written declarations must give way if inconsistent with actual conduct. (*Holt* v. *Hendee*, 248 Ill. 288, [21 Ann. Cas. 202, 93 N. E. 749]; *In re Morgan's Estate*, 95 Misc. Rep. 451, [159 N. Y. Supp. 105].) Here the decedent's statements that he resided in Los Angeles County were made years after he had closed up his house there, and during that period decedent had not spent even a day in that county. The filing of the income tax return in San Francisco appears to have occurred while decedent was detained at his daughter's home by illness, so that there was no longer time to file it elsewhere. In this state of the evidence it cannot be said that the trial court abused its discretion in holding that the newly discovered declarations, taken in connection with the facts already produced, would not change the result reached that the decedent died a resident of Kentucky.

This determination of the case makes it unnecessary to consider other points raised by appellant.

Order affirmed.

Shaw, J., and Sloss, J., concurred.