[Civ. No. 9209. Third Dist. June 11, 1958.]

ESTHER HUMMEL, Appellant, v. W. WESTLEY HUMMEL, Respondent.

George E. Paras for Appellant.

Frank K. Richardson for Respondent.

PEEK, J.—Plaintiff appeals from an order denying her motion under section 473 of the Code of Civil Procedure to vacate an interlocutory decree of divorce previously granted defendant on his cross-complaint.

The parties were married on August 23, 1952. On July 20, 1954, plaintiff filed her complaint for divorce on the ground of extreme cruelty and alleged that certain parcels of real property were the community property of the parties. Defendant's answer and cross-complaint admitted the allegation relative to the property. The trial court found that the previously mentioned real property was the community property of the parties; that plaintiff had been guilty of extreme cruelty; and that the real property should be sold forthwith and the net proceeds divided between the parties, 55 per cent to the defendant and 45 per cent to plaintiff. Plaintiff thereafter filed notice of her intention to move for a new trial on the grounds of newly-discovered evidence, insufficiency of the evidence to sustain the decree, and errors in law. The minutes of the court show that on the date set for hearing Mr. Lemmon of the law firm of Johnson and Lemmon, plaintiff's then counsel, appeared but she did not. Pursuant to his request, the hearing was continued for one week. The minutes of that hearing recite that plaintiff and her counsel appeared and

that her motion was denied. Thereafter plaintiff, by her present counsel, noticed an appeal from the interlocutory decree. Her appeal was subsequently abandoned and she then filed a motion to vacate the interlocutory decree, the denial of which forms the basis for the present appeal.

Her affidavit in support of the motion alleged that prior to the marriage of the parties they purchased as joint tenants the two parcels of real property on "H" and "Q" Streets in Sacramento; that she paid the sum of $3,412.22 of the down payment on the "Q" Street property and the defendant paid the sum of $100; that thereafter income from the property was used to repay a $3,400 loan thereon; that she paid the $3,400 and defendant paid $100 of the down payment on the "H". Street property; that throughout the marriage of the parties the real property was considered by both parties to be her separate property; that on numerous occasions defendant agreed to make improvements on said property for her benefit; that on or about September 4, 1953, defendant executed and delivered to her the following instrument which was in her handwriting and signed by him:

"September 4, 1953. I hereby relinquish all claims, rights, and demands upon property at 2611 H Street and 1303 Q Street, Sacramento. It is from this day forth, September fourth, one thousand nine hundred and fifty-three, to be regarded as her sole and personal property.

/s/ W. W. Hummel"

Her affidavit further alleged that defendant advised her that said instrument was of no legal consequence because it did not contain her name; that she did not inform her attorneys, Johnson and Lemmon, at the time of filing the complaint for divorce of the existence of said instrument because she had been led to believe by defendant that the same was of no legal significance; that she was unable thereafter to locate the same although she searched therefor; that her marital difficulties had caused her to be in a state of extreme emotional distress until the entry of the interlocutory decree; that subsequent to the trial of the divorce action and prior to April 7, 1955, she found the instrument and promptly took it to her attorneys; that prior to May 16, 1955, at the suggestion of her then counsel, Johnson and Lemmon, and consistent with her own desires, she consulted Harrison W. Call, an attorney, who advised her that immediate steps should be taken to bring the instrument to the attention of the court;

that on August 23 she retained Mr. Call as her attorney, and on August 25 signed a substitution of attorneys in blank; that Mr. Call informed her he would take charge of her case, would present the instrument as a ground for a new trial and as a ground for quieting her title to the property; that after her notice of motion for a new trial was filed on September 26, 1955, by her then attorneys, Lambert and Lemmon, that firm believed that the proceedings in connection with that motion would be handled by Mr. Call who had represented to them that he was then acting as her counsel; and that Mr. Lemmon appeared for her at the hearing set for November 2 merely because he had been unable to contact Mr. Call. The affidavit further states that subsequent to the denial of her motion for a new trial Mr. Call advised her that he was representing her and would file a timely appeal from the interlocutory decree; that after having failed in her attempts to contact Mr. Call, she retained her present counsel, Mr. Paras, and on December 14 a substitution was accordingly filed.

At the hearing on the motion to set aside the interlocutory decree, plaintiff testified that when she retained Mr. Call in August of 1955 he stated he would proceed with the case; that she relied upon him to represent her, but that he did nothing. It was stipulated by counsel that if Mr. Lemmon were called as a witness he would testify that on the date the document in question was first shown to him he advised Mrs. Hummel that it was a matter of importance with respect to a motion for a new trial provided the parties were unable to divide their property in accordance with the suggestion contained in the memorandum opinion of the court filed on April 7, 1955; that on August 1, 1955, she informed him that she could not follow his advice relating to the division of the property and he thereupon advised her to seek other legal assistance; that on August 25, 1955, Mr. Call informed him by telephone that he (Call) had been retained by Mrs. Hummel to represent her in the action; that on September 20, 1955, he informed her of his receipt of the notice of entry of judgment and advised her of the urgency of pressing her claim with reference to the property in question; that she told him she would so notify Call; that thereafter on two occasions during September through November he again advised her concerning the urgency of her motion for a new trial; that at Mr. Call's request he appeared at the hearing on November 2 to secure a continuance and that he appeared at the November 8 hearing solely to protect Mrs. Hummel's rights.

The defendant testified that he had placed more money in the property than had plaintiff and produced accounts in support thereof. He further testified that there had been many arguments throughout their marriage; that the signing of the instrument was preceded by an argument, and his only reason for doing so was to get some peace.

It is now plaintiff's contention that her affidavit and the evidence introduced in support thereof showed excusable neglect on her part and that of her attorneys, and therefore the court abused its discretion in denying her motion to set aside the interlocutory decree.

The condition or situation which section 473 of the Code of Civil Procedure seeks to remedy is one in which a party to a cause is unexpectedly placed to his injury without any fault or negligence of his own which ordinary prudence could not have guarded against. But it is not every inadvertence or negligence that warrants relief. It is "... only such inadvertence or negligence as may reasonably be characterized as excusable." (*Hughes* v. *Wright,* 64 Cal.App.2d 897, 901 [149 P.2d 392].)     An application for relief under said section is addressed to the sound discretion of the trial court, and in the absence of a clear showing of an abuse of such discretion, the trial court's ruling will not be disturbed on appeal. (*Beard* v. *Beard,* 16 Cal.2d 645 [107 P.2d 385].)

Here plaintiff's affidavit in support of her motion shows that she had the document in question in her possession at all times from the date of its execution. Her stated reasons for not informing her attorneys of its existence were (1) that her husband had told her it was of no legal value; (2) that she was not aware of its legal significance; and (3) that although she believed him she searched for it but was unable to locate the same. She further alleged she informed her attorneys of its existence prior to April 7, 1955. This, it should be noted, was several months prior to the entry of the interlocutory decree and her motion for a new trial. Furthermore the record shows that her present counsel and counsel for defendant stipulated at the hearing on the present motion that Mr. Lemmon, her original counsel, knew of its existence on either May 6 or June 3, 1955, and that he informed her it could be used on a motion for new trial. However, it was not until January 11, 1956, that the document was presented to the court for consideration in connection with her present motion. Her affidavit also avers that subsequent to May 16, at the suggestion of Mr. Lemmon and consistent with her own

desires, she consulted Mr. Call who also advised her that immediate steps should be taken to bring the writing to the attention of the court; and that on August 23 she retained Mr. Call and signed a substitution of attorneys in blank. However, the substitution was never filed and Mr. Lemmon and his firm continued as attorneys of record making two appearances for her concerning the present motion. On December 14 Mr. Paras, her present counsel, was substituted.

Certainly from the record as summarized it cannot be said that plaintiff has sustained the burden of showing by clear and convincing proof that the trial court so abused its discretion as to warrant this court in disturbing the order under the rule as enunciated in *Beard* v. *Beard, supra.*

Even assuming that her failure to produce the instrument in question at the hearing on her motion for a new trial was not by reason of any fault of her own but was the result of the negligence of her attorneys, nevertheless she was chargeable therewith. (*Colvin* v. *Sibley,* 117 Cal.App.2d 144, 146 [255 P.2d 16].) ▇ It is not the purpose of section 473 to permit the setting aside of judgments which are the result of inexcusable neglect of the parties or their attorneys in the performance of the latters' obligations to their clients. (*Stahl* v. *Fahrman,* 126 Cal.App.2d 755, 758 [272 P.2d 927].)

▇ In addition to what has heretofore been said, it is the further well-established rule that the showing to be made on a motion under section 473 is the same as on a motion for a new trial upon the ground of newly-discovered evidence. Therefore, unless it can be said on review that the showing made was of such a character as to make it manifest that the case would or should result differently on a new trial in view of the newly-discovered evidence, the order of the trial court will not be disturbed. (*Estate of Harkness,* 176 Cal. 537, 540 [169 P. 78].) Under the record before this court it cannot be said that the document in question would or should cause a different result on a new trial.

The order is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.