Filed 3/8/24  Farley v. Nexgen Lift Trucks CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| NINA FARLEY, | |
| Plaintiff and Respondent, | E080467 |
| v. | (Super.Ct.No. CIVDS1800721) |
| NEXGEN LIFT TRUCKS LLC, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Khymberli S. Y. Apaloo, Judge.  Affirmed.

Bhakta Law Firm and Ankit H. Bhakta for Defendant and Appellant.

Valiant Law, Raymond Babaian, and Tikran Babayan for Plaintiff and Respondent.

Nina Farley brought this action against her alleged former employers, Dustin Elijah Rivera and Crown City Forklift, Inc. (Crown City). She obtained a default judgment against both defendants but was unable to collect on it. Farley then moved to amend the judgment to add Nexgen Lift Trucks LLC (Nexgen) as a judgment debtor. The trial court granted that motion, and Nexgen moved the court to reconsider the ruling. The court denied the motion for reconsideration. Nexgen appeals from the amended judgment, arguing that the court erred by granting Farley's motion to amend the judgment and denying its motion for reconsideration. We affirm.

BACKGROUND

I. *Operative Complaint, Default Judgment, and Attempts to Enforce the Judgment*

According to the first amended complaint (FAC), Rivera owned and operated Crown City, a forklift service and repair business. Farley was employed by Crown City and Rivera from August 2016 to May 2017. The FAC alleged causes of action for assault; hostile work environment (sexual harassment); failure to prevent discrimination, harassment, and retaliation; negligence; wrongful constructive termination in violation of public policy; failure to provide accurate itemized wage statements; intentional infliction of emotional distress; and negligent infliction of emotional distress.

The superior court clerk entered the default of Rivera and Crown City in August 2018. In March 2019, the trial court entered a default judgment against Crown City and Rivera in the amount of $990,052.89. The court issued a writ of execution in July 2019. Farley was unable to collect on the default judgment through the writ of execution, and

2

the court ordered Rivera to appear for a judgment debtor's examination. He failed to appear for the examination. In December 2020, the court ordered that a civil bench warrant for Rivera in the amount of the default judgment be issued upon filing of a signed affidavit and processing fee.

## II. *Motion to Amend the Judgment*

Farley moved to amend the judgment in February 2022. Her motion sought to add Nexgen as a judgment debtor. She argued that Nexgen was liable as (1) the alter ego of Rivera or Crown City, (2) the successor to Crown City under Labor Code section 200.3, and (3) the successor to Crown City under the successor corporation theory.[1]

Farley submitted evidence that Rivera registered Nexgen with the California Secretary of State in March 2019, three days after entry of the default judgment in this case. The Secretary of State's records showed that Crown City was suspended. Rivera was both Crown City's and Nexgen's agent for service of process. Nexgen's registered business address was two miles from Crown City's registered business address. But a search on Google and Yelp showed Crown City and Nexgen at the same address (Nexgen's registered business address). According to Crown City's Yelp page, it was a forklift service, sales, and repair company. According to Nexgen's website, it was a forklift service, sales, and custom fabrication shop. In addition, Nexgen's website stated that it had "'been providing the best services to [the] High Desert, Inland Empire and

---

[1] Farley's motion referred to the "continuity of enterprise theory" (capitalization and boldface omitted), but the California case law on which she relied uses the term "'successor corporation' theory." (*McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 753 (*McClellan*), italics omitted.)

surrounding areas since 2007.'" (Boldface and italics omitted.) Crown City was registered with the Secretary of State in 2007. Nexgen's Facebook page contained photos of machines with crown logos on them. Nexgen listed those machines for sale on its Facebook page in December 2020.

Farley served her moving papers by mail on Nexgen, Crown City, and Rivera, but none of those parties opposed the motion. In April 2022, the court granted the motion to amend the judgment and ordered Farley to prepare a proposed order and proposed amended judgment. Farley served the proposed order and proposed amended judgment by mail on Nexgen, Crown City, and Rivera.

III. *Motion for Reconsideration and Objection to the Proposed Amended Judgment*

In May 2022, Nexgen filed an objection to Farley's proposed amended judgment. The objection argued that adding Nexgen to the judgment would violate its due process right to contest the merits of the action and to contest the application of the alter ego doctrine. Nexgen asserted that Farley should have "formally served" it with notice of the motion to amend the judgment. Nexgen stated that it intended to move for reconsideration of the ruling on the motion to amend the judgment, and it had already reserved a hearing date for that motion.

Several days later, Nexgen filed the motion for reconsideration. Nexgen asked the court to vacate its ruling and permit Nexgen to brief the alter ego issue before rehearing and ruling on it. Nexgen submitted Rivera's declaration to "lend credence to the fact that a fully-noticed and briefed hearing should be conducted on the issue of whether the alter

4

ego doctrine should apply." According to that declaration, Rivera is the sole manager and sole member of Nexgen. He was an officer and director of Crown City for "many years," but he was neither one when Crown City employed Farley. He also was not an owner of Crown City at that time. His wife was the sole owner of Crown City beginning in 2014 or 2015. He and his wife separated in 2015. He had not commingled his personal assets with the assets of Nexgen and had not diverted Nexgen's funds or assets for nonbusiness uses. Nor had he commingled the funds or assets of Crown City with those of Nexgen. Nexgen and Crown City had different business licenses, employer identification numbers, employees, owners, directors, and officers, and the two companies paid taxes separately.

Rivera also stated that he first learned of this action in 2019, after the court had entered the default judgment against him. He asked his wife about the lawsuit, and she told him that she was hiring attorneys to defend the case and "that it would be taken care of." He received "another notice" in the mail regarding the lawsuit on some unspecified date, and he called the phone number for Farley's counsel on the notice. Farley's counsel told him that he "had no options to get out of the default" because seven months had passed since the court entered the default judgment. Rivera then looked up the next hearing date, which was a hearing regarding the status of the judgment debtor examination in September 2020. He appeared at that hearing but was not allowed "to plead [his] case," and the court set a new hearing. He arrived late for that next hearing because it took him over an hour to clear security at the courthouse. The clerk informed

5

him that the court had already called his case and issued a bench warrant. When he received a "new legal notice" with Nexgen's name on it in April 2022, he finally contacted an attorney. If Rivera had known about the lawsuit before his default was entered, then he would have denied the allegations against him and defended himself.

Nexgen argued that because Crown City and Rivera had defaulted, all of the foregoing information constituted new facts or circumstances that were not before the court at the time of the prior ruling. Moreover, Nexgen argued, Farley had not "provided formal service," in violation of Nexgen's due process rights. Nexgen acknowledged that Farley had served the motion to amend the judgment by mail, but it asserted that mailing a document "typically is insufficient service of process for a party who has not yet appeared in the action."

Farley opposed the motion for reconsideration, arguing that Nexgen had not presented any new facts, circumstances, or law justifying reconsideration. Moreover, Nexgen had not offered a satisfactory explanation for its failure to oppose the motion to amend the judgment, and Nexgen did not cite any authority for the proposition that "'formal service'" on it was necessary.

In its reply brief, Nexgen argued that the "service issues," Rivera's lack of representation, and his failure to understand legal documents constituted new or different facts or circumstances warranting reconsideration. Nexgen further asserted that due process required compliance with the statutory procedures for service of process to establish personal jurisdiction. Nexgen continued to argue that the court should vacate its

ruling on the motion to amend the judgment and set a new briefing schedule so that Nexgen could formally oppose the motion.

IV. *Entry of the Amended Judgment and Denial of the Motion for Reconsideration*

In July 2022, the court entered the amended judgment stating that Crown City, Rivera, and Nexgen were jointly and severally liable to Farley. On the same date, the court signed and filed Farley's proposed order granting the motion to amend the judgment. The court entered the amended judgment after the parties had fully briefed the motion for reconsideration but before the court heard and ruled on the motion.

The court heard the motion for reconsideration in October 2022. The court explained that its tentative ruling was to deny the motion for reconsideration, because Nexgen had not offered new or different circumstances and a satisfactory reason for failing to produce any new information earlier. The court noted that Farley served the motion to amend the judgment on Nexgen, and there was no evidence that there was not "actual service." Rather, Nexgen argued that Farley did not serve it with a summons and complaint. The court reasoned that service of process was unnecessary. The court also observed: "And I don't know why Nexgen didn't file an opposition or appear at the prior hearing. Just didn't happen."

The court took the matter under submission and issued a minute order denying the motion for reconsideration. It reasoned that it had no jurisdiction to reconsider its prior ruling because it had already entered the amended judgment. The court also concluded that Nexgen had not offered any new information, and Nexgen did not argue that it never

received the motion to amend the judgment. Instead, Nexgen argued that Farley did not serve it with a summons and complaint, but that was not necessary to add an alter ego to a judgment.

## DISCUSSION

I. *Timeliness of the Appeal and the Certificate of Interested Entities or Persons*

As a threshold matter, Farley argues that Nexgen's notice of appeal is untimely. She also argues that we should strike Nexgen's opening brief or dismiss the appeal because Nexgen neglected to file a certificate of interested entities or persons. Both arguments lack merit.

A. *Timeliness of the Appeal*

Rule 8.104 of the California Rules of Court generally prescribes three possible deadlines for filing the notice of appeal: (1) 60 days after the court clerk serves a notice of entry of judgment or a filed-endorsed copy of the judgment; (2) 60 days after the appellant serves or is served by a party with a notice of entry of judgment or a filed-endorsed copy of the judgment; or (3) 180 days after the court enters the judgment. (Cal. Rules of Court, rule 8.104(a)(1)(A)-(C); unlabeled rule citations are to the California Rules of Court.) The earliest of those three deadlines governs. (Rule 8.104(a)(1).) For purposes of the rule, the term "'judgment' includes an appealable order." (Rule 8.104(e).) "The entry date of an appealable order that is entered in the minutes is the date it is entered in the permanent minutes. But if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed." (Rule 8.104(c)(2).)

Nexgen timely appealed under those rules.  It filed the notice of appeal on January 6, 2023, stating that it was appealing from the judgment or order entered on July 11, 2022.  That was the date on which the court entered the amended judgment.  There is no evidence in the record that the court clerk or a party served a notice of entry of the amended judgment or a filed-endorsed copy of the amended judgment.  We thus presume the applicable deadline was 180 days after entry of the amended judgment.  (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1456.)  The 180-day period expired on January 9, 2023 (180 days after July 11, 2022, extended to the next business day).  Accordingly, Nexgen timely filed the notice of appeal on January 6.

Farley's arguments to the contrary are unavailing.  She argues that the period to appeal started "as early as" April 14, 2022, the date of the hearing and the minute order granting her motion to amend the judgment.  She cites no authority for the proposition that the order granting the motion to amend the judgment was appealable.  (See *Hood v. Verdugo Lumber Co.* (1933) 219 Cal. 558, 559 [order granting motion to correct the judgment "is nonappealable, the same being reviewable on appeal from the [corrected] judgment"].)  Even if the order were separately appealable, that would not change our conclusion.  The minute order granting the motion to amend the judgment expressly directed Farley to prepare a proposed order, so it was entry of that signed, written order that started the time to appeal.  (Rule 8.104(c)(2).)  The court entered that signed order and the amended judgment on the same date, and there is no evidence that the clerk or a party served a notice of entry of the order.  The same 180-day period therefore applied,

9

and it expired on the same date that the period to appeal from the amended judgment expired.

Farley alternatively argues that the period to appeal started on May 2, 2022, when Nexgen filed its objection to the proposed amended judgment. She asserts that the objection showed that Nexgen had notice of the court's ruling on the motion to amend the judgment. She does not explain why mere notice of the ruling was relevant or how notice alone started the period to appeal under rule 8.104. It did not.

Farley further argues that Nexgen had to appeal no more than 60 days after the order denying Nexgen's motion for reconsideration, a period that expired on December 5, 2022. An order denying a motion to reconsider a nonappealable order is also nonappealable (*I.J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 331), so such an order is reviewable on appeal from the judgment. (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292 [interlocutory or interim nonappealable orders generally are reviewable on appeal from the final judgment].) The time to appeal after entry of the amended judgment therefore governs, not the claimed December 5 deadline.

Assuming that the order granting the motion to amend the judgment were appealable, Farley still is incorrect. A motion to reconsider an appealable order may extend the normal time to appeal from the underlying order, but it may not shorten the time to appeal. (Rule 8.108(a), (e)(1)-(3) [extending the period to appeal by 30, 90, or 180 days after certain triggering events].) The claimed December 5 deadline would

shorten Nexgen's normal time to appeal under rule 8.104.  The deadline under rule 8.104 consequently governs.  (Rule 8.108(a).)

For all of these reasons, we conclude that Nexgen timely appealed.

B.  *Certificate of Interested Entities or Persons*

Rule 8.208 requires the parties to include a certificate of interested entities or persons in their principal brief on appeal.  (Rule 8.208(d)(1).)  If the appellant fails to do so, the clerk must notify the appellant that they have 15 days to file the certificate and that the court may strike their opening brief or dismiss the appeal if they fail to comply.  (Rule 8.208(d)(3).)  We may impose those sanctions if the appellant fails to file the certificate after receiving the clerk's notice.  (Rule 8.208(d)(4).)

Nexgen did not include the certificate of interested entities or persons in its opening brief.  But the clerk did not notify Nexgen of that failure, give it 15 days to file the certificate, or warn it that failure to do so could result in sanctions.  In any event, after Farley raised the omission in her respondent's brief, Nexgen included the certificate in its reply brief on appeal.  Under those circumstances, we decline to exercise our discretion to strike the opening brief or dismiss the appeal.

II.  *Motion to Amend the Judgment*

Nexgen argues that the trial court erred by granting the motion to amend the judgment.  We are not persuaded that the court prejudicially erred.

Code of Civil Procedure section 187 authorizes the court to amend a judgment to add a judgment debtor.  (*Favila v. Pasquarella* (2021) 65 Cal.App.5th 934, 942 (*Favila*);

11

unlabeled statutory citations are to the Code of Civil Procedure.)  That section gives the court "all the means necessary to carry" its jurisdiction "into effect" and permits the court to adopt "any suitable process or mode of proceeding," if there is no statute specifically pointing out the applicable "course of proceeding."[2]

The court may add judgment debtors under several theories, including the alter ego doctrine and the successor corporation theory.  (*Favila*, *supra*, 65 Cal.App.5th at p. 942; *McClellan*, *supra*, 89 Cal.App.4th at pp. 753-754.)  In addition, the Legislature recently enacted Labor Code section 200.3, which makes a "successor to a judgment debtor" liable for any damages owed to the judgment debtor's former workforce.  (Lab. Code, § 200.3, subd. (a).)

"In general, '[w]e presume that the trial court['s] order is correct, and imply findings that are necessary to support the judgment.'"  (*Global Protein Products, Inc. v. Le* (2019) 42 Cal.App.5th 352, 367.)  The appellant bears the burden of demonstrating prejudicial error.  (*Demara v. The Raymond Corp.* (2017) 13 Cal.App.5th 545, 552.)  We review the court's ultimate decision whether to add a judgment debtor for abuse of discretion, and we review factual findings necessary to the court's decision for substantial evidence.  (*Favila*, *supra*, 65 Cal.App.5th at p. 943.)

---

**2**     Section 187 states in full:  "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

Under the alter ego doctrine, the court may add a new judgment debtor if (1) the new party is the alter ego of the old party, and (2) the new party controlled the litigation, "thereby having had the opportunity to litigate, in order to satisfy due process concerns." (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106.) However, the court may not amend a default judgment to add alter ego judgment debtors. (*Motores De Mexicali, S.A. v. Superior Court* (1958) 51 Cal.2d 172, 175-176; *Wolf Metals Inc. v. Rand Pacific Sales Inc.* (2016) 4 Cal.App.5th 698, 703-704, 708-709 (*Wolf Metals*).)

Under the successor corporation theory, corporations "'cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old. Especially is this well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation.'" (*McClellan*, *supra*, 89 Cal.App.4th at p. 754, italics omitted.) "Generally, "'California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations."'" (*Wolf Metals*, *supra*, 4 Cal.App.5th at p. 705.)

13

Under Labor Code section 200.3, a "successor to a judgment debtor shall be liable for any wages, damages, and penalties owed to any of the judgment debtor's former workforce pursuant to a final judgment." (Lab. Code, § 200.3, subd. (a).) Successorship is established by any of the following factors: (1) the entity uses "substantially the same facilities or substantially the same workforce to offer substantially the same services as the judgment debtor"; (2) the entity has "substantially the same owners or managers that control the labor relations as the judgment debtor"; (3) the entity employs "as a managing agent any person who directly controlled the wages, hours, or working conditions of the affected workforce of the judgment debtor"; or (4) the entity operates "a business in the same industry and the business has an owner, partner, officer, or director who is an immediate family member of any owner, partner, officer, or director of the judgment debtor." (Lab. Code, § 200.3, subd. (a)(1)-(4).)

Nexgen argues that the court erred by amending the judgment under the alter ego doctrine. First, Nexgen points out that it was a default judgment, and Nexgen had no control over the litigation. Second, Nexgen asserts that holding it liable for Rivera's debts amounted to reverse piercing of the corporate veil, not traditional veil piercing, and an appellate court has rejected reverse piercing (*Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510). Third, Nexgen asserts that because the alter ego doctrine is equitable in nature, we should consider various circumstances that render it inequitable to add Nexgen to the judgment.

14

Regardless of whether the court erred under the alter ego doctrine, Nexgen fails to show that any such error was prejudicial. Farley moved to add Nexgen on the basis of several theories. But Nexgen does not argue that the court erred under the successor corporation theory or Labor Code section 200.3. Nexgen does not even explain the factors that the court considers under those theories. To show a reasonable probability of a more favorable result in the absence of the claimed error, Nexgen must show that the court erred under all of the theories on which Farley relied. (See *Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161 ["To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached'"].) Because Nexgen has not made that showing, it has not carried its burden of establishing prejudice from any error under the alter ego doctrine.

Moreover, Nexgen cannot demonstrate prejudice, because the court properly amended the judgment under Labor Code section 200.3. Crown City owed Farley damages pursuant to the March 2019 default judgment, a final judgment. (Lab. Code, § 200.3, subd. (a).) Farley presented evidence that Nexgen was operating from the same address that Crown City used and that the two companies provided forklift services and sales. In addition, Nexgen's website claimed that it had been providing its services since 2007—the year that Crown City was registered as an entity with the Secretary of State. Nexgen did not exist as a corporate entity until March 2019. The record contains substantial evidence that Nexgen "[u]ses substantially the same facilities . . . to offer substantially the same services" as Crown City, so there is substantial evidence that

15

Nexgen is Crown City's successor. (Lab. Code, § 200.3, subd. (a)(1).) Accordingly, the court's ruling was correct under at least one theory applicable to the case, even if it was not correct under the alter ego doctrine. Nexgen therefore cannot carry its burden of showing that any errors concerning the alter ego doctrine were prejudicial.

III. *Motion for Reconsideration*

Nexgen argues that the court erred by denying the motion for reconsideration of the ruling adding Nexgen as a judgment debtor. We disagree.

Section 1008 authorizes a motion for reconsideration of a prior order based on "new or different facts, circumstances, or law." (§ 1008, subd. (a).) "[N]ew or different facts" does not mean merely "new to the trial court." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 213.) Evidence that was available and easily obtainable by the moving party at the time of the prior order does not qualify as "new or different" within the meaning of section 1008. (*Ibid.*) Moreover, section 1008 contains a "diligence requirement." (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1199.) The moving party "must give a satisfactory explanation for the previous failure to present the allegedly new or different evidence or legal authority." (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 383.)

An order denying a motion for reconsideration "'is interpreted as a determination that the application does not meet the requirements of section 1008. If the requirements have been met to the satisfaction of the court but the court is not persuaded the earlier ruling was erroneous, the proper course is to grant reconsideration and to reaffirm the

16

earlier ruling.'" (*Randy's Trucking, Inc. v. Superior Court of Kern County* (2023) 91 Cal.App.5th 818, 844 (*Randy's Trucking*).) We review an order denying a motion for reconsideration for abuse of discretion. (*California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 42.)

The court did not abuse its discretion. Rivera's declaration in support of the motion for reconsideration attempted to explain why he had not responded to the lawsuit, how he had belatedly retained counsel, and the claimed distinction between Crown City and Nexgen. But none of that information qualified as new for purposes of section 1008—it was not unavailable or unobtainable at the time of the ruling on the motion to amend the judgment. Nor did Nexgen give a satisfactory explanation for failing to produce that information earlier. Nexgen acknowledged that Farley served it by mail with the motion to amend the judgment, but Nexgen asserted that "formal service" was required—that is, "service of process." However, Nexgen never claimed that it did not actually receive the motion to amend the judgment. Even when the court observed at the hearing that it did not know why Nexgen failed to oppose the motion to amend, and nothing indicated that there was not "actual service," Nexgen did not claim that it never received the motion to amend.[3] The bare assertion in its moving papers that service of process was required, without any citation to authority or further explanation, did not establish a satisfactory explanation for failing to produce information earlier.

---

[3] Nexgen asserts for the first time on appeal that it never received the motion to amend the judgment. But none of its citations to the record supports that assertion. Neither Rivera's declaration nor counsel's declaration in support of the motion for reconsideration claimed that Nexgen did not receive the motion to amend.

17

Moreover, assuming for the sake of argument that Nexgen did offer new information and a satisfactory explanation for failing to produce it earlier, the information did not show that the court erred by granting the motion to amend the judgment. The motion for reconsideration did not address the relevant factors under all three theories on which Farley relied in moving to amend the judgment. Nexgen just asked the court to allow more briefing and a rehearing on the motion to amend the judgment. Without a showing that the prior ruling was erroneous, the court would have merely granted reconsideration but reaffirmed its prior ruling. (*Randy's Trucking*, *supra*, 91 Cal.App.5th at p. 844.) In other words, on this record any error in failing to grant reconsideration was harmless, because it is not reasonably probable that the court would have vacated its prior ruling. (See *Shaolian v. Safeco Ins. Co.* (1999) 71 Cal.App.4th 268, 277 [any error in denying motion for reconsideration was harmless, given that the underlying order was correct].)

Nexgen argues that the court erred by concluding that entry of the amended judgment deprived the court of the power to reconsider the prior ruling. In a related vein, Nexgen contends that the court erred by entering the amended judgment while the motion for reconsideration was pending. The court correctly concluded that it could not grant reconsideration after it had entered the amended judgment. (*APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 182 ["Once the trial court has entered judgment, it is without power to grant reconsideration. The fact that a motion for reconsideration may have been pending when judgment was entered does not restore this power to the trial

18

court"].)  And as already explained, the court correctly denied the motion for reconsideration for reasons unrelated to the amended judgment.  Thus, Nexgen fails to show that it was prejudiced by any error in entering the amended judgment while the motion for reconsideration was pending.

Nexgen additionally argues that the court incorrectly determined that service of a summons and complaint on Nexgen was not required to add it as a judgment debtor.  Nexgen contends that without service of process, the court had no personal jurisdiction over it and could not enter a binding judgment against it.  The argument lacks merit.

"'Process' signifies a writ or summons issued in the course of a judicial proceeding."  (§ 17, subd. (b)(7).)  It is generally true that compliance with the statutory requirements for service of process are necessary to establish personal jurisdiction over a defendant.  (§ 410.50, subd. (a) ["the court in which an action is pending has jurisdiction over a party from the time summons is served on him"]; *Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801, 808.)  The Code of Civil Procedure prescribes four basic methods for service of a summons in California, including personal service on the defendant.  (§§ 415.10, 415.20, 415.30, 415.50.)  "A general appearance by a party is equivalent to personal service of summons on such party."  (§ 410.50, subd. (a); *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1028 (*Serrano*) ["A court acquires personal jurisdiction over a party that makes a general appearance in an action even if no summons is served on that party"].)

19

"A party whose participation in an action is limited to challenging the court's personal jurisdiction does not make a general appearance." (*Serrano*, *supra*, 162 Cal.App.4th at p. 1029.) But other forms of participation in the action—such as contesting the merits of the case, raising objections other than lack of personal jurisdiction, or seeking affirmative relief—ordinarily amount to a general appearance. (*Ibid.*; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.) "Even a nonparty that is not named in the pleadings makes a general appearance and submits to the court's personal jurisdiction by participating in the proceedings in such a manner." (*Serrano*, at p. 1029.)

Nexgen made a general appearance in this matter when it filed the motion for reconsideration. The moving papers argued that Farley should have "provided formal service" of the motion to amend the judgment, but Nexgen did not argue that the court lacked personal jurisdiction over it. In any event, the motion for reconsideration was not limited to contesting the service issue. Nexgen asked the court to vacate its ruling on the motion to amend the judgment and permit new briefing and a rehearing on the alter ego issue. For instance, the moving papers stated that "a fully-noticed and briefed hearing should be conducted on the issue of whether the alter ego doctrine should apply to strip Nexgen of its corporate existence (which Nexgen contends should absolutely not occur)." In support of that challenge, Nexgen submitted Rivera's declaration, which attempted to address factors relevant to the alter ego doctrine. Under these circumstances, Nexgen participated in the action by contesting application of the alter ego doctrine, offering

supporting evidence, and seeking affirmative relief from the court.  It consequently made a general appearance and submitted to the court's personal jurisdiction over it before the amended judgment was entered.

For all of the foregoing reasons, the court did not err by denying Nexgen's motion for reconsideration.

DISPOSITION

The amended judgment and the order denying the motion for reconsideration are affirmed.  Farley shall recover her costs of appeal.**4**  (Rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

FIELDS

Acting P. J.

RAPHAEL

J.

---

**4**     Farley asks us to specify that her costs of appeal include reasonable attorney fees. We deny the request.  The Rules of Court do not include attorney fees as recoverable costs of appeal.  (Rule 8.278(d)(1).)  Appellate attorney fees are recoverable if authorized by statute or contract.  (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 637.)  But Farley does not identify what statute authorizes her to recover attorney fees.  Nor does she claim a contractual right to recover fees.  If she has such a statutory or contractual right, she may move for appellate attorney fees in the trial court.  (Rule 3.1702(c).)

21